**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY A. BAKER, | ) | |
| | ) | CASE NO. 5:04CV1953 |
| Petitioner, | ) | |
| | ) | JUDGE GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Timothy A. Baker, ("Baker"), challenges the constitutionality of his conviction in the

case of *State v. Baker*, Case No. 1997 CR 0153.  Baker, *pro se*, filed a Petition for Writ of Habeas

Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on September 27, 2004 with the United States

District Court for the Northern District of Ohio.  On March 10, 2005, Respondent filed a Motion to

Dismiss the Petition.  (Doc. No. 9.)  This matter is before the undersigned Magistrate Judge pursuant to

Local Rule 72.2.  For reasons set forth in detail below, the Magistrate Judge recommends

Respondent's Motion to Dismiss (Doc. No. 9) be GRANTED.

## I.  Procedural History

### A.  Conviction

The Stark County Grand Jury returned a three-count indictment charging Baker with one count of felonious sexual penetration in violation of Ohio Revised Code ("O.R.C.") § 2907.12 and two counts of gross sexual imposition in violation of O.R.C. § 2907.05.  (Doc. No. 11, Exh. 1.)  A jury found Baker guilty on all counts.  (Doc. No. 11, Exh. 2.)  The trial court sentenced Baker to concurrent prison terms of life for the felonious sexual penetration count and four years for each of the gross sexual imposition counts.  (*Id.*)

### B.  Direct Appeal

Baker appealed the trial court's judgment and sentence to the Ohio Court of Appeals.  (Doc. No. 11, Exh. 3.)  On December 7, 1998, the Court of Appeals affirmed the trial court's judgment. (*Id.*)  On December 17, 1998, Baker filed a Motion for Reconsideration in the Court of Appeals. (Doc. No. 11, Exh. 4.)  On January 5, 1999, the Court of Appeals denied Baker's motion.  (*Id.*)

Baker appealed his conviction to the Ohio Supreme Court.  (Doc. No. 11, Exh. 5.)  On April 7, 1999, the Ohio Supreme Court denied Baker leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  (*Id.*)

### C.  Application to Reopen

On March 4, 1999, Baker filed a Rule 26(B) Application to Reopen the Appeal in the Court of Appeals.  (Doc. No. 11, Exh. 6.)  On May 10, 1999, the Court of Appeals denied Baker's application.  (Doc. No. 11, Exh. 8.)  Baker appealed to the Ohio Supreme Court.  (Doc. No. 11, Exh. 9.)  On September 1, 1999, the Ohio Supreme Court dismissed Baker's appeal as not involving any

2

substantial constitutional question.  (*Id.*)

**D.  Other Post-conviction motions**

On January 13, 2000, Baker filed a Petition to Vacate Conviction and Set Aside Sentence in the trial court.  (Doc. No. 11, Exh. 10.)  On January 28, 2000, the trial court denied Baker's motion. (Doc. No. 11, Exh. 11.)

On April 4, 2000, Baker filed a Motion for Expert Assistance and Motion for Leave to File a Delayed Motion for New Trial in the trial court.  (Doc. No. 11, Exh. 12.)  On June 29, 2000, the trial court denied Baker's motions.  (Doc. No. 11, Exh. 15.)  On September 1, 2000, Baker filed a notice of appeal.  (Doc. No. 11, Exh. 16.)  On October 10, 2000, the Court of Appeals dismissed Baker's appeal for want of jurisdiction.  (Doc. No. 11, Exh. 18.)

On November 19, 2001, Baker filed a Motion to Vacate or Modify Sentence.  (Doc. No. 11, Exh. 19.)  Respondent could not find any record of the court ruling on this motion and asserts that apparently the court did not do so.

On August 8, 2002, Baker filed an Affidavit/Amendment to Writ of Error in the trial court. (Doc. No. 11, Exh. 20.)  The trial court treated this motion as one for post-conviction relief.  (Doc. No. 11, Exh. 21.)  On January 26, 2005, the trial court denied Baker's motion.  (*Id.*)

**E.  Federal Habeas Petition**

On September 27, 2004, Baker, *pro se*, filed a Petition for Writ of Habeas Corpus.

## II.  Statute of Limitations

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Baker filed his

3

habeas corpus petition after the effective date of the AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320,

326-27, 337 (1997).  In the AEDPA, Congress enacted a statute of limitations for the filing of habeas

petitions.  The statute provides, in relevant part:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> * * *
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)(A), (B), (D), (2).

The Sixth Circuit, like the majority of circuits, grants a one year grace period for convictions

which became final prior to April 24, 1996 – the effective date of the AEDPA. *Brown v. O'Dea*, 187

F.3d 572, 577 (6th Cir. 1999)*, rev'd on other grounds*, 530 U.S. 1257 (2000).  Thus, a petitioner

whose conviction became final prior to April 24, 1996 would normally have until April 24, 1997 to file

his habeas petition.  Once the limitations period is expired, state collateral review proceedings can no

longer serve to avoid the statute of limitations bar.  *See Webster v. Moore*, 199 F.3d 1256, 1259

(11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period

cannot toll that period because there is no period remaining to be tolled").

4

In order for a post-conviction petition to toll the limitations period while it is pending in state court, the petition must be "properly filed." *See* 28 U.S.C. § 2244(d)(2). A petition for post-conviction relief is properly filed when it is delivered to and accepted by the appropriate court officer for placement into the official record in compliance with the *applicable laws and rules governing filings*, including the time limits upon its delivery. *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000)(emphasis added).

**A. 28 U.S.C. § 2244(d)(1)(A) and (d)(2)**

On April 7, 1999, the Ohio Supreme Court denied Baker leave to appeal and dismissed his direct appeal. Therefore, Baker's conviction became final on July 6, 1999, ninety days after the Ohio Supreme Court's decision. *See* U.S. Sup. Ct. Rule 13 (petition for certiorari must be filed within 90 days after the entry of judgment by the "state court of last resort"). However, the limitations period did not start running on July 6, 1999 because Baker's Rule 26B application to reopen was pending in the Ohio Supreme Court on this date. On September 1, 1999, the Ohio Supreme Court denied Baker's application, and the limitations period began running ninety days thereafter, or December 1, 1999. *See Abela v. Martin*, 348 F.3d 164, 172-73 (6th Cir. 2003) (The statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until the conclusion of time, *i.e.*, ninety days, for seeking U.S. Supreme Court review of the state court's final judgment on that application).

The limitations period began running on December 1, 1999 and would have expired on December 1, 2000 unless Baker properly filed any post-conviction petitions to toll the time until he filed his federal habeas petition. Baker filed a Petition to Vacate Conviction and Set Aside Sentence on

January 13, 2000 and a Motion for Leave to File a Delayed Motion for New Trial on April 4, 2000.

The trial court dismissed both motions as untimely.  *See* Doc. No. 11, Exhs. 11, 15.  Therefore,

Baker's motions did not serve to toll the limitations period because they were not "properly filed."  *See*

*Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (The defendant's post-conviction petition was

not properly filed because the state court found the petition untimely under state law).  Therefore, the

limitations period expired on December 1, 2000.  Baker's motions filed after December 1, 2000 did

not toll the period because there was no time left to toll.  *See Webster*, 199 F.3d at 1259.

Even if this Court assumes that all of Baker's post-conviction motions were properly filed and

tolled the limitations period, Baker's habeas petition is still time-barred:

| December 1, 1999 | Limitation period begins | |
| --- | --- | --- |
| | | 43 days elapsed |
| January 13, 2000 | Baker files Petition to Vacate: Period tolled until February 27, 2000, or thirty days after the court denied Baker's motion. *See* App. R. 4(A). | |
| February 27, 2000 | Limitation period continues | |
| | | 36 days elapsed |
| April 4, 2000 | Baker files Motion for New Trial: Period tolled until November 24, 2000, or forty-five days after the Court of Appeals dismissed Baker's appeal.  *See* S. Ct. R. II, Sec. 2 (A). | |
| November 24, 2000 | Limitation period continues | |
| | | 359 days elapsed |

6

| November 19, 2001 | Baker files Motion to Vacate | *Total of 438 days elapsed by this date* |

As 438 days (43 days + 36 days + 359 days) passed before Baker filed his third post-conviction petition on November 19, 2001, this motion and all subsequent motions did not toll the period any further     because it already had expired.  Accordingly, Baker's petition would be time-barred even if his post-conviction petitions were "properly filed."

**B.  28 U.S.C. § 2244(d)(1)(D)**

Under this section, the limitation period does not run from the date the petitioner's conviction became final, but instead starts running from the date on which the petitioner could have discovered, through the exercise of due diligence, the factual predicate of the claim or claims presented.  The question is not when prisoner first learned of the new evidence; it is when he should have learned of the new evidence had he exercised reasonable care.  *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000); *Lott v. Coyle*, 261 F.3d 594, 605 (6th Cir. 2001).  Habeas claimants invoking this provision shoulder the burden of proving that they exercised due diligence.  *Lott*, 261 F.3d at 605.

Baker's habeas petition is extremely unclear.  He apparently raises three grounds for relief, although they are essentially all the same ground: he has discovered new evidence after his trial that proves he is actually innocent.  This evidence consists of: affidavits from Baker's sister, Carol Swonger (one notarized on March 2, 1999 and two notarized October 15, 1999), Sylvia Wayne (notarized June 17, 1999), and Baker's sister, Michaelle Baker (notarized October 15, 1999); a report from handwriting expert Michael Robertson dated June 23, 1999; and psychological reports of the victim from 1990 and 1991.  Baker submitted one of Carol Swonger's affidavits to the state court on March

7

4, 1999 in support of his rule 26(B) application.  He submitted the other the affidavits and the handwriting expert's report to the state trial court on January 13, 2000 in support of his petition to vacate conviction and set aside sentence.  He submitted the psychological reports on July 3, 2000 as a supplement to his motion for a new trial.

Baker has provided no explanation as to why this information, much of which comes from his relatives, could not have been discovered at the time of his trial.  However, even if this Court accepts the most liberal date on which Baker arguably could have discovered the factual predicate of his claims and assumes that his efforts were reasonable, his petition still would be time-barred.  Baker was aware of all new evidence, at the latest, January 13, 2000, the date he submitted the affidavits and the handwriting expert's report in support of his Petition to Vacate Conviction and Set Aside Sentence.[1] However, even if this Court assumes the limitations period did not start running until February 27, 2000, or thirty days after the trial court denied Baker's petition to vacate, Baker's claim still would be time-barred as 395 days (36 days + 359 days) passed before Baker filed his third post-conviction petition.  *See* chart, supra.  Accordingly, Baker's petition is time-barred, even if his new evidence was not discovered until January 2000.

---

[1] Although Baker submitted the psychological reports on July 3, 2000, the record reveals that Baker was aware of the reports, or at least the information contained in them, no later than March 4, 1999.  In an affidavit that Baker submitted to the trial court on March 4, 1999 in support of his Rule 26(B) application, Carol Swonger stated that she provided Baker's counsel before the trial with documentation showing the victim's emotional and psychological disorders.  These are the disorders stated in the reports.  Therefore, Baker should have been aware of this information no later than March 4, 1999.

## C. Actual Innocence

Baker claims that he discovered new evidence after his trial that proves he is actually innocent. Although Baker clearly did not raise this argument as an actual innocence exception to the AEDPA's statute of limitations, this Court will consider the applicable case law.  The Sixth Circuit has declined to decide whether there is an actual innocence exception to the AEDPA's statute of limitations on at least two occasions. *See Allen v. Yukins*, 366 F.3d 396, 404-05 (6th Cir. 2004); *see also Townsend v. Lafler*, 2004 U.S. App. LEXIS 9693, *9 (6th Cir. May 14, 2004) (unpublished opinion).  In *Allen* and *Townsend*, the Sixth Circuit declined to adopt an actual innocence exception to the AEDPA's statute of limitations because the petitioner failed to prove that "no reasonable juror would have found [him] guilty beyond a reasonable doubt in light of all the evidence." *Id.*  This Court will consider Baker's actual innocence claim using this same approach.

In the instant action, Baker was convicted of felonious sexual penetration and gross sexual imposition.  The Court of Appeals summarized the evidence:

> [The victim, Nikki,] testified that appellant began molesting her when she was in the third grade.  Nikki testified that on several occasions, appellant touched her breasts and vagina.  She testified that appellant made her touch his penis with her hand until he ejaculated, and moved his penis around on her breasts until he ejaculated.  She also testified that appellant had penetrated her vagina with his finger.
>
> ***
>
> During appellant's case at trial, several of appellant's relatives testified that they met Nikki at the Stark County Fair on August 31, 1997. Appellant's cousin, Brenda McAlister, testified that she told Nikki that appellant was in jail awaiting trial for rape.  According to the defense witnesses, Nikki responded that appellant had never raped her, that she only claimed that she [sic] molested her, and that she only made the allegations so that her mother would leave appellant.  Nikki's mother

testified at trial that three weeks earlier, while in therapy, Nikki claimed that appellant never had touched her. [Nikki's mother] admitted that she was still in a twelve-year relationship with appellant, and had two children with him.

Finally, appellant testified in his own defense.  He denied ever confessing to the police.  He claimed that he did not understand the questions Sergeant Shankle asked him, he simply signed the statement given to him by the officer.  He claimed that he did not understand the terms " penis" and "vagina" used by Shankle during the interview process.

\*\*\*

Sergeant Shankle confirmed that appellant confessed to some of the acts alleged by Nikki.  Although copies of appellant's statements bore two different dates, the statements were identical in all other respects.  Although Sergeant Shankle cannot explain how the same statement ended up being copied and labeled with two separate dates, he testified affirmatively that he only interviewed appellant once, on August 21, 1996.

\*\*\*

Deputy Veigh testified that when he responded to the domestic violence call, [the victim's mother] told him that she was aware of an inappropriate sexual relationship between appellant and her daughter Nikki.

(Doc.  No. 11, Exh., pp. 3-4, 7, 8.)

In regard to Baker's new evidence, Baker's sister, Carol Swonger, and Sylvia Wayne assert that the victim told them she had her period at the time of the alleged sexual incident.  In another affidavit, Baker's sister, Michaelle Baker, states that she asked the victim whether Baker or anyone ever touched her sexually and the victim responded in the negative.  Michaelle Baker also stated that after the victim heard her talking about a girl having to take a lie detector test in her son-in-law's sexual abuse case, the victim asked her what would happen if the test revealed the girl was lying.  In the handwriting report, the expert states that he reviewed (1) a copy of Notice of Constitutional rights

10

bearing a signature "Tim Baker" and dated August 21, 1996, (2) copy of the Voluntary Statement form

bearing the initials "TAB" and dated August 15, 1996, and (3) a copy of the voluntary statement dated

August 21, 1996.  The expert stated the similarities and differences between the signature on the notice

and Baker's known exemplars, and noted that the voluntary statements are identical, with only the date

changed on one, possibly with correction fluid.  In the statement and copy, the middle initial was

overwritten.

Baker's new evidence fails to show that no reasonable juror would have found him guilty

beyond a reasonable doubt in light of all the evidence.[2]  The affidavits purport to attack the veracity of

the victim.  However, Baker presented witnesses at his trial claiming Nikki told them that she lied about

the alleged incident.  This "new" evidence is merely cumulative and is proffered primarily by Baker's

relatives.  In regard to the handwriting report, the expert only listed a brief analysis of the writings.  He

did not provide any conclusions, but instead stated that examination of the original documents is needed

to resolve these issues and such examination may show that Baker in fact signed the notice.  In light of

the evidence presented at trial establishing Baker's guilt (*see, supra*), his newly discovered evidence

fails to establish that no reasonable juror would have found him guilty beyond a reasonable doubt.

Accordingly, Baker has not shown that this Court should find an actual innocence exception to the

AEDPA's statute of limitations.

---

[2] As this Court previously discussed, the psychological reports of the victim are not new
evidence because Baker's counsel was aware of such information prior to Baker's
trial.

## III.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Respondent's Motion to Dismiss

(Doc. No. 9) be GRANTED.


/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge


Date: April 18, 2005


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

12